IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

       Plaintiff,

   v.

GRAPHIC PACKAGING
INTERNATIONAL, INC.,

       Defendant.

Case No. 12 C 6371

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Graphic Packaging International, Inc.'s ("Graphic") Motion to Dismiss Plaintiff's Second Amended Complaint [ECF No. 31]. For the reasons stated herein, Graphic's Motion is granted.

## I. BACKGROUND

Plaintiff United States Equal Employment Opportunity Commission (hereinafter, "Plaintiff" or the "EEOC") brings this action under Title I of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101 *et seq.* against Graphic on behalf of Jerry Bradley ("Bradley"). Bradley suffers from sleep apnea, which he claims limits his sleeping and breathing substantially.

Bradley was an electrician at Graphic's Elk Grove facility. The EEOC claims that on May 10, 2009, Bradley gave his manager, Paul Migala ("Migala"), a note from his doctor stating that Bradley

had sleep apnea and recommending that he be assigned to a regular shift, preferably during the day. Bradley requested, as an accommodation for his sleep apnea, to transfer from the night shift to an 8-hour day shift. The EEOC alleges that Graphic failed to respond to this request.

In October 2009, while he was still working on the night shift, Bradley again asked managers Paul Migala ("Migala") and Steve Rossignol ("Rossignol") to be assigned to an 8-hour day shift because of his sleep apnea. Rossignol replied that he could not promise Bradley anything. The EEOC claims that neither manager asked for more medical information, explained the reason they could not accommodate Bradley, nor suggested an alternative accommodation.

The EEOC claims that because Graphic twice failed to honor his request to transfer to an 8-hour day shift, Bradley thought it would be useless to ask for the accommodation again. In November 2009, Bradley was assigned a 12-hour night shift. In early 2010, Graphic transferred another electrician from the night shift to a day shift, causing Bradley to believe that Graphic did not intend to transfer him to an 8-hour day shift.

By October 2010, Graphic had transferred Bradley to a day shift. However, it was a 12-hour shift, not the 8-hour shift he requested. In addition, at that time, Maintenance Manager Anthony Hildy ("Hildy") told Bradley to ignore his doctor's July 10, 2010

request that he work no more than 4 days per week. As a result, Bradley claims he again thought it was useless to ask for a transfer to an 8-hour shift.

On March 22, 2011, Bradley filed a Charge of Discrimination with the EEOC, alleging that Graphic discriminated against him in violation of the ADA. His charge asserted that "I have been discriminated against because of my disability (Sleep Apnea with complications) and denied an accommodation. Because I have requested an accommodation, I have been retaliated against." *See* Def.'s Mot. to Dismiss Sec. Am. Compl., Ex. A. Plaintiff EEOC filed this lawsuit on Bradley's behalf pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), on August 13, 2012. Plaintiff filed its First Amended Complaint on December 21, 2012. Graphic moved to dismiss, arguing that the Plaintiff's claim was untimely. In response to that Motion, Plaintiff asked for and was granted leave to file a Second Amended Complaint, asserting that Plaintiff could state a timely claim based on the futile gesture doctrine. Graphic again moves to dismiss, arguing that Plaintiff's claim is still time-barred.

## II. <u>LEGAL STANDARD</u>

To survive a motion to dismiss, a complaint must comply with Rule 8(a) by providing a short plain statement of the claim showing that the pleader is entitled to relief while providing defendant fair notice of what the claim is and the grounds upon which it

rests. *Chi. Police Sergeants Ass'n v. City of Chicago*, No. 08-cv-4214, 2011 U.S. Dist. LEXIS 72424 at *7 (N.D. Ill. July 6, 2011). In ruling on a motion to dismiss under Rule 12(b)(6), courts accept as true all of the plaintiff's well-pleaded factual allegations and any inferences reasonably drawn from them. *Id.*

### III. <u>ANALYSIS</u>

Graphic's argument as to why this action should be dismissed is straightforward. It argues that the facts alleged in the Second Amended Complaint demonstrate that Bradley failed to file his charge with the EEOC in a timely manner after twice being denied his requested accommodation. As such, Graphic argues Plaintiff's claim is barred.

Under the ADA, a complainant must file his charge with the EEOC within 300 days of the date the alleged unlawful employment practice occurred. 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5. The failure to "timely file the charge with the EEOC bars any subsequent civil rights suit." *Snider v. Belvidere Township*, 216 F.3d 616, 618 (7th Cir. 2000). A refusal to accommodate under the ADA is a discrete act. *Teague v. Northwestern Mem. Hosp.*, No. 11-3630, 2012 U.S. App. LEXIS 17818 at *10 (7th Cir. Aug. 23, 2012). Thus, the continuing violation doctrine, which concerns a claim based on an ongoing policy rather than discrete acts of discrimination, does not apply. *Id.*

On the face of the Second Amended Complaint, Bradley first requested the accommodation of moving to an 8-hour day shift on May 19, 2009.  Plaintiff alleges Graphic failed to respond to this accommodation request in violation of the ADA.  Bradley made a second request in October 2009, to which Manager Steve Rossignol responded that he could not promise Bradley anything.  Plaintiff alleges that at this time, Graphic failed to ask for more medical information, explain the reasons for not accommodating Bradley, or suggest an alternative accommodation in violation of the ADA.  Both of these alleged violations occurred well beyond 300 days prior to Bradley filing his charge with the EEOC on March 22, 2011.  *See* Sec. Am. Compl. ¶ 8; Def.'s Mot. to Dismiss Sec. Am. Compl. Ex. A. As such, any action based on those violations is untimely.

The EEOC does not dispute that those two refusals to accommodate occurred outside the statutory 300 day window.  It also does not dispute that the continuing violation doctrine does not apply.  In fact, the EEOC now states that it is not even seeking relief for the May and October 2009 accommodation refusals. Instead, the EEOC argues that the case should be deemed timely because it would have been futile for Bradley to continue making the same request after Graphic's repeated denials.  It bases this argument on the "futile gesture doctrine," which finds its roots in Title VII jurisprudence.  *See Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 365-66 (1977).

The futile gesture doctrine was developed to protect those individuals who were discouraged from applying for a job because they were aware of a consistently enforced discriminatory policy that would prevent them from being hired. As the Supreme Court explained in *International Brotherhood*:

> The effects of and the injuries suffered from discriminatory employment practices are not always confined to those who were expressly denied a requested employment opportunity. A consistently enforced discriminatory policy can surely deter job applications from those who are aware of it and are unwilling to subject themselves to the humiliation of explicit and certain rejection. If an employer should announce his policy of discrimination by a sign reading "Whites Only" on the hiring-office door, his victims would not be limited to the few who ignored the sign and subjected themselves to personal rebuffs. The same message can be communicated to potential applicants more subtly but just as clearly by an employer's actual practices – by his consistent discriminatory treatment of actual applicants, by the manner in which he publicizes vacancies, his recruitment techniques, his responses to casual or tentative inquiries, and even by the racial or ethnic composition of that part of his work force from which he has discriminatorily excluded members of minority groups. When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting an application.

*Id*. Based on *International Brotherhood* and its progeny explaining the futile gesture doctrine, the EEOC does not base its claim of discrimination on the May and October 2009 refusals to accommodate. Instead, it argues that because Bradley's prior requests were denied and he believed it was futile to make another request, his continued desire to be accommodated through a shift change after

May 26, 2010 (300 days before he filed his charge with the EEOC) should be treated as a timely accommodation request.

Graphic responds that EEOC is trying simply to assert a continuing violation theory in a different form by relying on the futile gesture doctrine. It argues that the futile gesture doctrine does not allow a plaintiff to circumvent the requirement of filing a timely charge under Title I of the ADA, and that the doctrine does not apply to the allegations in the Second Amended Complaint. Graphic has the better side of the argument.

The parties first argue as to whether the futile gesture doctrine even applies to Title I of the ADA. However, even assuming the doctrine applies to a Title I claim, there is no indication it applies to a situation such as this, where Bradley actually did request an accommodation (twice). Plaintiff fails to cite to any case in which a plaintiff asserting a claim under Title I of the ADA has proceeded successfully under the futile gesture doctrine after failing to file a charge with the EEOC within 300 days of having an accommodation request rejected. The Court suspects that is because the purpose of the doctrine makes such application improper. The futile gesture doctrine seeks to provide a remedy for those who are deterred from applying for a position (or arguably seeking an accommodation) due to a "consistently enforced discriminatory policy" so as to spare themselves the humiliation of certain rejection. *See International*

*Brotherhood*, 431 U.S. at 365-66.  However, the allegations in the Complaint make it clear that Bradley was not deterred from requesting the accommodation, nor that he was deterred from doing so due to a discriminatory policy.

First, Bradley was not deterred from seeking the desired accommodation – according to his Complaint, he sought it twice. Graphic's failure to provide the requested accommodation when he asked for it should have put him on notice then that he should file a claim with the EEOC for failure to accommodate.  Instead of acting then, however, Bradley waited well beyond the statutory period to file his charge with the EEOC.  When Bradley finally did file his late charge with the EEOC, he made no mention in it of being deterred from filing a request for an accommodation. Instead, he claimed that he was discriminated against because he was denied an accommodation, and retaliated against because he requested one.  *See* Def.'s Mot. Dismiss Sec. Am. Compl. Ex. A.

Second, EEOC does not allege that Bradley was deterred from requesting his desired accommodation because of a consistently enforced discriminatory policy.  Indeed, nowhere in the Second Amended Complaint does it allege that Graphic had a policy of not providing accommodations to those suffering from sleep apnea, and that this policy was what caused Bradley to not request accommodations a third time.  Instead, it states explicitly that Bradley did not make a third accommodation request due to having

his previous requests rejected.   Sec. Am. Compl. ¶ 11 ("Because Graphic had twice not allowed Bradley to transfer to an 8-hour day shift, Bradley thought it would be useless to ask again for the same accommodation.").

The EEOC argues that *EEOC v. Joe's Stone Crabs, Inc.,* 296 F.3d 1265 (11th Cir. 2002) holds "that a claim can be covered by the futile gesture doctrine when there is no express policy to discriminate."  Pl.'s Resp. at 4.  That is true, but not quite complete.  A more accurate statement would be that the case supports the notion that a Title VII claim can be covered by the futile gesture doctrine if there is an express or implicit policy to discriminate.  *See Joe's Stone Crabs,* 292 F.3d at 1275-76. Thus, whether express or implicit, such a discriminatory policy must exist.  Plaintiff's Complaint pleads no allegations of Graphic having such a policy.  Instead, it pleads only that Plaintiff's two requests for accommodations were denied, and the Court finds allegations of such denials of only Plaintiff's requests to fall short of an alleged policy, express or implicit.

In short, the EEOC does not allege that this case involves a disabled individual who was deterred from ever seeking an accommodation due to his familiarity with his employer's policy of refusing accommodations.  As such, even assuming the futile gesture doctrine could apply to a Title I ADA claim, there is no reason it would apply in these circumstances.  Instead, the EEOC has pled

allegations involving a disabled individual who twice sought an accommodation and had those requests go unfulfilled. Thus, he should have filed his charge with the EEOC within 300 days of having his accommodation request rejected as required by the statute. He did not, and so his claim must be dismissed.

Finally, Graphic moves pursuant to 28 U.S.C. § 1927 for sanctions in the form of reasonable attorneys' fees and costs in filing its second Motion to Dismiss. Graphic contends that it exposed the untimely allegations in Plaintiff's First Amended Complaint in its initial Motion to Dismiss, and Plaintiff's Second Amended Complaint failed to cure those deficiencies. As such, it contends Plaintiff has wasted the parties' and Court's resources. Section 1927 provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. A court has discretion to impose § 1927 sanctions when an attorney has acted in an "objectively unreasonable manner" by engaging in a "serious and studied disregard for the orderly process of justice," or where "a claim [is] without a plausible legal or factual basis and lacking in justification." *Pacific Dunlop Holdings, Inc. v. Barosh,* 22 F.3d 113, 119 (7th Cir. 1994) (quotations omitted).

- 10 -

While the Court is dismissing Plaintiff's Second Amended Complaint, it finds no indication that it was unreasonable or filed in bad faith. There is a plausible legal and factual basis contained in the Second Amended Complaint to demonstrate that Plaintiff was not acting in an "objectively unreasonable manner" in filing it. Plaintiff attempted to cure the deficiencies identified in its First Amended Complaint. While Plaintiff's legal argument regarding the futile gesture doctrine is ultimately unsuccessful, it was not frivolous. The Court thus declines Graphic's request to sanction Plaintiff.

## IV.  CONCLUSION

For the reasons stated herein, Graphic's Motion to Dismiss the Second Amended Complaint with Prejudice [ECF No. 31] is granted. The Second Amended Complaint is dismissed with prejudice. Defendant's request for reasonable attorneys' fees and costs is denied.


**IT IS SO ORDERED.**


_____
Harry D. Leinenweber, Judge
United States District Court

Date:7/1/2013

- 11 -